UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

KATHERINE WILLIAMS,

     Plaintiff,

      v.

AR DENTAL, LLC and ASPEN DENTAL
MANAGEMENT, INC.,

     Defendants.

Civil Action No.

COMPLAINT
JURY TRIAL REQUESTED
INJUNCTIVE RELIEF REQUESTED

NOW COMES the Plaintiff, Katherine Williams ("Williams"), by and through undersigned

counsel, and complains against the Defendants, AR Dental, LLC ("AR Dental") and Aspen Dental

Management, Inc. ("ADM"), as follows:

JURISDICTION AND PARTIES

1.     This action arises under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§

12101 *et seq.* and the Maine Human Rights Act ("MHRA"), 5 M.R.S. §§ 4551 *et seq.;* and also

includes a common law claim of tortious interference.

2.     Williams is a United States citizen residing in Old Orchard Beach, Maine.

3.     AR Dental is a Maine limited liability company. It is a dental practice that does

business in Maine under the Aspen Dental trade name.

4.     AR Dental is owned and operated by Dr. Amrita Reddy.

5.     ADM is a Delaware corporation.

6.     AR Dental had 15 or more employees for each working day in each of 20 or more

calendar weeks in the same calendar year as when the alleged discrimination occurred.

7.      ADM had more than 500 employees for each working day in each of 20 or more calendar weeks in the same calendar year as when the alleged discrimination occurred.

8.      AR Dental employed 15 or more employees at its Auburn, Maine location at all times material to this case.

9.      This Court has subject matter jurisdiction over Williams' federal and state claims pursuant to 28 U.S.C. §§ 1331 and 1367.

10.     On or about September 20, 2016, Williams filed a timely Charge/Complaint of Discrimination against Defendants alleging unlawful disability discrimination and retaliation with the Maine Human Rights Commission ("MHRC") and Equal Employment Opportunity Commission ("EEOC").

11.     On or about September 21, 2017, the EEOC issued a Notice of Right to Sue with respect to Williams' federal law claims against Defendants under the ADA.

12.     On or about September 28, 2017, the MHRC issued a Notice of Right to Sue with respect to Williams' state law claims against Defendants under the MHRA.

13.     Williams has exhausted her administrative remedies with respect to all claims set forth in this Complaint.

<u>JURY TRIAL REQUESTED</u>

14.     Williams requests a trial by jury for all claims and issues for which a jury is permitted.

<u>JOINT EMPLOYERS</u>

15.     At the time of her termination, Williams was employed by AR Dental and ADM.

16.     AR Dental and ADM are joint employers.

17.     Evidence of the joint employment includes the following.

18.     Williams worked for several ADM practices and transferred seamlessly from one to the other even though the practices were owned by different corporate entities.

19.     Williams started working for ADM as a hygienist in 2010 in a practice located in Augusta, Maine.

20.     Williams transferred to an ADM practice in Oregon in 2012.

21.     In June 2015, Williams moved back to Maine and took a brief leave of absence while she was getting her Maine license reinstated.

22.     Williams started working again in Maine in August 2015 as a floater. She was based in the Auburn office and floated, as needed, to ADM practices in Portland, South Portland, Biddeford and Topsham.

23.     Williams eventually moved into a hygienist position in the Auburn, Maine practice owned by AR Dental. She was paid $30 per hour for her work.

24.     When Williams was a floater, the Regional Manager for ADM dispatched her to various assignments.

25.     Williams was given a copy of ADM's Employee Handbook and told that the policies and procedures in the Handbook applied to her.

26.     Williams' medical leave of absence was administered by Ryan Van Wormer, a Human Resources Assistant employed by ADM.

27.     Decisions regarding Williams' medical leave, request for reasonable accommodation, and requests for family medical leave were made by Ryan Van Wormer and ADM.

28.     Van Wormer played a significant role in the decision to deny Williams' request for medical leave and the decision to terminate her employment.

29.     The termination letter dated June 22, 2016 was sent to Williams by ADM.

30.     ADM maintained one employee file for Williams from her date of hire in 2010 through her termination in 2016.

31.     ADM was Williams' employer for purposes of filing a claim for unemployment.

32.     In addition, the facts set out below regarding the chronology of events support that Williams was employed by both ADM and AR Dental and that the two companies are an joint employer for purposes of this case.

33.     Alternatively, to the extent that ADM was not a joint employer, the actions of ADM in this case including the denial of Williams' request for ongoing leave, involvement in the denial of her right to a reasonable accommodation, and involvement in the decision to terminate her employment constitute unlawful tortious interference.

<u>FURTHER FACTUAL ALLEGATIONS</u>

34.     At all times material to this case, Williams had major depressive disorder, a disability for purposes of the MHRA and ADA.

35.     Williams' major depressive disorder substantially limited major life activities, including working and caring for herself when viewed without mitigating measures.

36.     Williams' major depressive disorder also significantly impaired her health when viewed without mitigating measures and is on the list included in the MHRA of conditions that are always protected disabilities regardless of severity.

37.     Williams requested and needed a medical leave of absence from December 2014 until February 2015 because of her depression and an attempted suicide.

38.     When Williams returned to work, her psychiatrist advised her to take one day off per week in order to continue with therapy.

39.     This request for a reduced schedule was a request for reasonable accommodation for purposes of the MHRA and ADA.

40.     The Oregon dental practice granted Williams the accommodation without difficulty.

41.     When Williams moved into the hygienist position in Auburn, Maine, she told Dr. Reddy about her need for a reduced work week accommodation for her disability, major depressive disorder.

42.     Dr. Reddy's response to Williams' request for accommodation evidenced that she resented the request.  Nonetheless, Dr. Reddy granted her a 34 hour per week schedule.

43.     Dr. Reddy stated many times that she wanted a hygienist at the Auburn office five days per week.

44.     Dr. Reddy and a Regional Manager named Kevin (LNU) arranged to have Williams meet with the dentist in charge of another Aspen practice on January 20, 2016.

45.     That dentist did not have any openings and was confused about why he was being asked to meet with Williams.

46.     In the end, AR Dental's lead dentist (Dr. Ali Shazib) opposed Dr. Reddy and would not allow her to transfer Williams out.

47.     During Williams' medical leave of absence that began in March 2016, Shazib left the practice and was not there to protect her job.

48.     During Thanksgiving week in November 2015, Williams was part of a team of twelve Aspen Dental clinicians that traveled to Honduras to provide free dental care to more than 500 people who could not afford to pay for dental care.

49.     The working conditions in Honduras were challenging. Williams and others had to hike up a mountain and work long hours. They had no running water or electricity.

50.     Williams was sick all the time after returning from the mission trip. She had nausea, diarrhea, dizziness and confusion.

51.     Williams was eventually diagnosed with e-coli and Salmonella infections.

52.     Williams tried to work even though she was sick. Between November 2015 and March 2016, she missed work quite a few times due to the illness.

53.     Williams took prescription medications for the e-coli and Salmonella infections.

54.     The infections cleared up but she did not get better.

55.     Leaning over, lifting and bending caused Williams' blood pressure to spike.

56.     Williams was sent to the emergency room from work twice due to blood pressure spikes, palpitations, severe chest and abdominal pain, diarrhea, and vomiting.

57.     Once, when Reddy came to the office and found that Williams was not there because she had been sent to the emergency room from work, Reddy asked the office manager, "Why haven't you started firing people yet?"

58.     The office manager told Williams about this when she came back to work.

59.     When Williams was sent to the emergency room from work, she was not allowed to return to work without clearance from her doctor.

60.     Williams was informed by medical providers that she likely had a small hiatal hernia before she became ill during the mission trip.

61.     Williams' medical providers told her that the vomiting created a larger hernia.

62.     A portion of Williams' gastrointestinal organs pushed through her diaphragm and pressed on a nerve causing symptoms like a heart attack.

63.     Williams needed surgery to repair the hernia.

64.     Williams had to see a cardiologist first to rule out heart problems before surgery could be scheduled.

65.     Williams could not predict when she would feel too ill to work and did not want to cause an undue burden by missing work without prior notice.

66.     Williams' hernia was a disability for purposes of the MHRA and ADA.  This condition substantially impaired the functioning of her nervous system, digestive system, and her circulatory system. The condition also substantially limited major life activities including working, leaning over, and bending until it was addressed through surgery, particularly when viewed without mitigating measures.

67.     The hernia also significantly impaired Williams' health for purposes of the MHRA.

68.     Williams requested a medical leave of absence due to her anxiety, depression, chest pain, vomiting, and hiatal hernia from AR Dental.

69.     Williams started her medical leave of absence on March 16, 2016. Williams' request for medical leave was a request for reasonable accommodation for purposes of the ADA.

70.     Williams was advised that she should also communicate with Ryan Van Wormer, Human Resources Assistant employed by ADM regarding her need for leave.

71.     Van Wormer provided Williams with a Medical Certification of Accommodation Request form on or about March 28, 2016.

72.     Williams brought the form to her doctor and had her doctor complete the form.

73.     On or about April 11, 2016, Williams provided Van Wormer with the completed form which set out the nature and extent of her medical condition, the reason she required leave from work as an accommodation, the nature of her symptoms, and her prognosis at that time.

74.     The form indicated that Williams' prognosis was that she would be referred to a physician for surgery on her hernia to address her symptoms and permit her to return to work.

75.     Van Wormer informed Williams that he was denying her eligibility for FMLA leave but that she would be granted  a "personal medical leave" from March 16, 2016 through May 1, 2016.

76.     Williams kept in touch with the AR Dental office manager while she was out.

77.     On March 24, 2016, Williams told the office manager that she had appointments with specialists scheduled during the next two weeks and that if she needed surgery, she would need more time off.

78.     On April 6, 2016, Williams touched base with the office manager again about her situation.

79.     On April 15, 2016, Williams told the office manager that her cardiologist had not cleared her for surgery yet.

80.     On May 6, 2016, Williams told the office manager that her cardiologist had cleared her for surgery and that she would let him know when it was scheduled.

81.     On May 26, 2016, Williams told the office manager that her surgical consult was scheduled for June 1, 2016.

82.     In late May 2016, Williams received a letter from ADM Human Resources Assistant Ryan Van Wormer stating that her leave of absence had expired and that she was

expected to return to work or provide documentation from her healthcare provider about her need for additional leave.

83.     On May 29, 2016, Williams responded by email and let Van Wormer know that she had been keeping the office manager updated about her leave.

84.     On June 1, 2016 Williams sent an email to Van Wormer letting him know that she asked her medical provider to fax him an update. She also faxed notes to Van Wormer from a recent office visit with her gastroenterologist and a fax cover sheet showing that she had asked her doctor to provide ADM with documentation of her need for additional leave.

85.     On June 3, 2016, Williams exchanged email messages with Van Wormer. The first email message read:

> From: Katherine Williams
> Sent: Friday, June 03, 2016 6:54 AM
> To: Van Wormer, Ryan
> Subject: Re: Return to work
>
> Here's an update re: documentation.
>
> I had my follow up with my Gastro specialist regarding my condition and asked him to provided further documentation to you and he said I should have my PCP provide that, so I faxed a request to her and her nurse called and said I should have the gastro specialist provide it, so I called his office and asked again but he has yet to call me back.
>
> Here is what is going on;
>
> I have had chest pain, palpitations, BP spikes, dizziness and vomiting since November of 2015, for which I was sent to the ER twice by my MCD and OM while at work.  I saw the gastroenterologist who diagnosed a hiatal hernia and said surgery is necessary but had to have me see a cardiologist in order to make sure it wasn't my heart and that I could undergo surgery.  The Cardiologist ran myriad tests and determined that my issue is related to the hernia and not my heart.  So then I had to wait to get an appointment for further consult with gastro, who has ordered more tests in order to determine the size of the hernia and the extent of what the surgery will be.  Now I am waiting for them to call me with dates for all of this testing and when those results are in, we will schedule the surgery and determine the amount of time that will be necessary for my post operative recovery.  In the meantime, my symptoms have not gotten better and it is deemed unsafe for me to be treating patients until the symptoms have been resolved (with surgery).

*So the amount of time I'll be out is unable to be exactly determined and could take anywhere from 2 to 4 months.* [Emphasis added.]

It's been frustrating for me as I would like to have the surgery and return to work but booking all of these tests and appointments is what is taking so long.

I am still trying to get one of my doctors to fax a statement to you but they are both "passing the buck" so to speak.

I have plenty of information I can fax or mail to you in the meantime from my office visits that prove my condition and the tests being ordered.

I'm doing everything I can to expedite the process so I can return to work but I'm being stalled by having to work around my providers' schedules and availability.
I will send you what documentation I do have and continue to reach out to the doctors about getting another signed statement regarding the reasons/need for my absences from work.
If there's anything else I can do, let me know, or if it would be easier for you to contact one of them directly, I can provide that information as well.

Thank you for your patience.

I am frustrated with this slow process as well.

Sincerely,
Katherine Williams, RDH

86.     Van Wormer's response read:

From: Van Wormer, Ryan
Date: June 3, 2016 at 5:00:22 PM EDT
To: Katherine Williams
Subject: RE: Return to work

Good Afternoon Katherine,

Please send me what you have so far & provide me with the contact information. I can try reaching out to them

- Ryan

87.     Williams' reply read:

From: Katherine Williams
Date: June 3, 2016 at 9:28:19 PM EDT
To: Van Wormer, Ryan
Subject: Re: Return to work

> Great Ryan.  Thank you.
>
> My gastroenterologist is Dr. Beveridge and his office number is +1 (207) 406-7300.  He's really hard to get hold of as his schedule varies.
>
> My PCP is Anne Barker, NP and her office number is 207-633-7820.
>
> I will fax the schedule and orders for my upcoming procedures as well as soon as I can access a fax machine.
>
> I apologize for all of the delays.  This has been very frustrating for us all.
>
> Thank you for working with me on this.  I do appreciate it.
>
> -Katherine

88.     On June 25, 2016, Williams touched base with Van Wormer to be sure that he had what he needed. Her email read:

> From: Kathy Williams
> Date: June 25, 2016 at 12:35:20 PM EDT
> To: Van Wormer, Ryan
> Subject: Re: Return to work
>
> Hi Ryan.  I was curious as to whether or not you've heard from either of my medical providers.
>
> I haven't had access to a fax machine to send you the medical forms.  I can scan and email them I think though.  Would that be acceptable?  Or should I mail them?
>
> Would you give me your mailing address just in case the scanner/email thing doesn't work?
>
> Thanks for your help and patience with all of this.
>
> Talk to you soon.
>
> Thank you,
> Katherine Williams

89.     The following day, June 26, 2016, Williams received a certified letter from ADM dated June 24, 2016 stating that she was terminated effective June 22, 2016.

90.     No reason for termination was stated in the letter.

91.     To date, Defendants have not provided any details regarding the communications between ADM and AR Dental, the roles that Van Wormer, Dr. Reddy, and others played in the termination decision, or provided any of the documentation reflecting the decisions regarding the denial of Williams' request for ongoing leave or the decision to fire her.

92.     Between June 3 and June 24, 2016, no one had called or emailed Williams or her medical providers to ask questions or for medical information about her need for additional leave of absence.

93.     Williams was led to believe that Van Wormer was going to contact her medical providers but he never did.

94.     On June 29, 2016, Williams wrote another email to Van Wormer that read:

> From: Kathy Williams [mailto:kat_9018@yahoo.com]
> Sent: Wednesday, June 29, 2016 4:30 PM
> To: Van Wormer, Ryan
> Subject: Unexpected Termination of Benefits and Employment
>
> Dear Ryan,
>
>   I received a certified letter in the mail saying that my insurance and, as far as I understand, my employment, has been terminated.  I had no warning and there is no reason for the termination stated in the letter.
>   I am in the middle of serious medical treatment and have had to put it all on hold due to the fact that I was unaware that I'd lost my insurance.
>
>   A letter of warning and reason should have been mailed to me prior to the one I received.
>
>   I emailed and attempted to reach you by phone early last week to check on the status of my documentation from my providers and to see what exactly you needed me to send you that I had control over and received no reply from you.  As far as I knew, everything was in order from my end with my medical leave.
>
>   I did everything I was asked that was within my control and am extremely disappointed in the way I've been treated, especially after 6 years of loyal service to Aspen Dental.
>
>   I'd like a statement from ADMI regarding my abrupt dismissal.
>
>   I'd also like to know how to get in contact with someone who can help me navigate this, especially if there is a legal team that is available to Aspen employees.  Termination

of my insurance without warning has put me in a very serious predicament and has a very negative impact on my health.

Thank you for your time and I expect to hear back from you very soon.

Sincerely,

Katherine Williams, RDH

95.     Williams told Van Wormer that she had not received any warning that she was about to be terminated.

96.     Williams indicated that based on Van Wormer's request for contact numbers for her medical providers, she had done everything that she had control over to cooperate with his requests and that "everything was in order" from her end of things regarding her request for additional medical leave.

97.     Williams heard nothing from Van Wormer for over a week and then received a short email saying he had been out of the office and did she still need assistance with this.

98.     Williams responded on July 14, 2016 by asking Van Wormer if he had read her last email. She also asked what she needed to do to get an explanation for her termination in writing.

99.     Van Wormer did not respond.

100.    On July 18, 2016, Plaintiff's counsel wrote to AR Dental and Reddy asking for Williams' personnel file and for a letter stating why she was terminated.

101.    On August 1, 2016, Reddy wrote a letter stating that Williams was terminated on June 22, 2016 for failure to return from leave.

102.    A document in Williams' personnel file indicates that Defendants coded her as not eligible for rehire.

103.    Williams had to cancel her surgery when she was terminated and lost her health insurance benefits.

104.    Williams was able to reschedule and had her surgery on December 30, 2016.

105.    The surgery was uneventful and Williams was able to work after two to three weeks of recovery.

106.    In response to Williams' complaint of discrimination and retaliation to the MHRC and EEOC, Defendants raised several defenses.

107.    None of Defendants' stated reasons excuses or justifies the decision to terminate Williams' employment as set out below.

108.    *First*: Williams did not ask for medical leave for an indefinite period of time.

109.    Defendants' claim that Williams asked for a medical leave of absence for an indefinite period of time is factually untrue.

110.    Williams told Van Wormer by email on June 3, 2016 that the additional amount of time that she needed was from two to four months.

111.    *Second*: Williams did her best to provide Defendants with documentation to establish an end date for her leave of absence.

112.    Williams did her best to provide Defendants with medical documentation of the end date for her leave of absence but was not able to do so before Defendants terminated her employment.

113.    Williams explained in her June 3, 2016 email to Van Wormer that she asked her gastroenterologist to provide documentation but was told to have her PCP provide it.

114.    Williams asked her PCP and was told to get documentation from the gastroenterologist.

14

115.    Williams offered to send Van Wormer the documentation she did have.

116.    Van Wormer did not encourage Williams to provide documentation and instead, asked for contact information for her medical providers.

117.    Williams reasonably concluded that Van Wormer asked for contact information because he intended to contact the medical providers directly.

118.    Williams did everything she was asked that was within her control.

119.    Van Wormer indicated that he would contact her medical providers directly but failed to do so.

120.    *Third:* Reddy acted with discriminatory animus toward Williams.

121.    Williams disclosed to Reddy that she has depression when she asked Reddy for a reduced work week schedule accommodation.

122.    Reddy was resentful about Williams' request.

123.    Reddy stated many times that she wanted a hygienist at the Auburn office five days per week.

124.    Reddy took affirmative steps to try and transfer Williams out of the Auburn office to an ADM practice owned by someone else.

125.    Later, when Williams became seriously ill and had to go to the emergency room for treatment of symptoms related to her e-coli and Salmonella infections and hiatal hernia, Reddy asked the office manager, "Why haven't you started firing people yet?"

126.    *Fourth*: Van Wormer knew that he was treating Williams unfairly when he participated in the decision to terminate her.

127.    Van Wormer knew that Williams was having difficulty getting medical documentation from her providers to support her request for additional time off from work.

15

128.    Van Wormer asked Williams for her medical providers' contact information on June 3, 2016.

129.    That same day, Williams provided Van Wormer with their telephone numbers.

130.    Williams had every reason to believe that Van Wormer was going to contact her medical providers directly to obtain the information he needed.

131.    Van Wormer led Williams to believe that he was going to help her and then terminated her employment without letting her know that he was not going to help her.

132.    When Williams emailed Van Wormer about the termination and asked for answers he failed to respond.

133.    *Fifth*: Defendants failed to provide Williams with the reasonable accommodation of an additional two to four months of leave; no proof of intentional discrimination is required.

134.    Williams' hiatal hernia constituted a disability given that she could not work in her field as a hygienist until she had surgery.

135.    Defendants were informed and knew of her medical condition and need for surgery and that she needed additional medical leave of absence of two to four months.

136.    Defendants did not grant Williams' request and instead, they fired her.

137.    Although there is proof of discriminatory animus in this case, no such evidence is required to establish Williams' failure to accommodate claim.

138.    *Sixth:* Williams' leave of absence did not cause an undue burden on Defendants.

139.    Defendants were able to cover Williams' schedule with temporary or "float" hygienists while she was out.

140.    Williams had a serious health condition that prevented Williams from performing her job when she commenced a medical leave of absence on March 16, 2016.

141.    Williams was a person with disabilities and a qualified individual with disabilities during her employment and at the time Defendants fired her.

142.    Williams was also regarded as a person with disabilities by Defendants.

143.    Williams' request and need for a reduced work week was a request for reasonable accommodation under the ADA and MHRA.

144.    Williams' request and need for time off and for a medical leave of absence was a request for reasonable accommodation under the ADA.

145.    Defendants discharged Williams because of her disabilities and because she was regarded as disabled and in retaliation for Williams' request and need for reasonable accommodations.

146.    Defendants failed to provide Williams with the reasonable accommodation of medical leave until she was able to return to work.

147.    Defendants' failure to accommodate Williams, resulting in the termination of her employment, constitutes intentional disability discrimination.

148.    The evidence reflects that to the extent that Van Wormer did not terminate Williams, than Van Wormer, while working within the scope of his employment with ADM, directed AR Dental to unlawfully fire Williams and provided AR Dental with false and misleading information and guidance regarding Williams which led to her termination from employment.

149.    Van Wormer's actions as set out in this Complaint were done within the scope of his employment with ADM and when Van Wormer acted as set out in the Complaint he was acting as an agent of ADM.

150.    Defendants acted intentionally and with deliberate indifference to Williams' rights.

151.    Defendants' termination of Williams caused substantial mental anguish and loss of enjoyment of life as well as damage to her career.

152.    Defendants' termination of Williams led to the loss of her health insurance and as a result Williams had no choice but to delay her hernia surgery by months.

153.    Williams unnecessarily suffered the physical symptoms of her condition for months longer than necessary as a direct result of Defendants' unlawful termination.

154.     Williams remained unable to work due to the symptoms of her hernia for months longer than necessary as a direct result of Defendants' unlawful termination.

## COUNT I: MHRA – FAILURE TO ACCOMMODATE

155.    Paragraphs 1-154 are incorporated by reference.

156.    Defendants' conduct violated the MHRA's requirement that employers provide qualified individuals with disabilities with reasonable accommodation.

## COUNT II: MHRA-DISABILITY DISCRIMINATION

157.    Paragraph 1-156 are incorporated by reference.

158.    Defendants unlawfully discriminated against Plaintiff by terminating her employment because of disability, because she was regarded as a person with a disability, and because of symptoms caused by her disability and which could have been addressed by reasonable accommodation.

159.    Defendant ADM unlawfully discriminated against Plaintiff by aiding, abetting, inciting, compelling or coercing AR Dental to violate the MHRA.

## COUNT III: MHRA – RETALIATION

160.    Paragraphs 1-159 are incorporated by reference.

161.    Defendants' conduct violates the MHRA's prohibition against retaliation against employees who request and need reasonable accommodations.

<u>COUNT IV: ADA – FAILURE TO ACCOMMODATE</u>

162.    Paragraphs 1-161 are incorporated by reference.

163.    Defendants' conduct violated the ADA's requirement that employers provide qualified individuals with disabilities with reasonable accommodation.

<u>COUNT V: ADA – DISABILTY DISCRIMINATION</u>

164.    Paragraphs 1-163 are incorporated by reference.

165.    Defendants unlawfully discriminated against Plaintiff by terminating her employment because of disability, because she was regarded as a person with a disability, and because of symptoms caused by her disability and which could have been addressed by reasonable accommodation.

<u>COUNT VI: ADA – RETALIATION</u>

166.    Paragraphs 1-165 are incorporated by reference.

167.    Defendants' conduct violates the ADA's prohibition against retaliation against employees who request and need reasonable accommodations.

<u>COUNT VII- TORTIOUS INTERFERENCE</u>

168.    Paragraphs 1-167 are incorporated by reference.

169.    A valid contract or prospective economic advantage existed between Plaintiff and Defendant AR Dental.

170.    ADM was aware of the contract/prospective economic advantage and interfered with that contract or advantage with the intention of interference with and ending the contract/prospective economic advantage.

171.    ADM's interference proximately caused damages to Plaintiff.

PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court grant the following relief:

A. Declare the conduct engaged in by Defendants to be in violation of her rights;

B. Enjoin Defendants, their agents, successors, employees, and those acting in concert with it from continuing to violate her rights;

C. Order Defendants to reinstate Plaintiff or award front pay to Plaintiff;

D. Award lost future earnings to compensate Plaintiff for the diminution in expected earnings caused by Defendants' discrimination;

E. Award equitable-relief for back pay, benefits and prejudgment interest;

F. Award compensatory damages in an amount to be determined at trial;

G. Award punitive damages in an amount to be determined at trial;

H. Award liquidated damages in an amount to be determined at trial;

I. Award nominal damages;

J. Award attorney's fees, including legal expenses, and costs;

K. Award prejudgment interest;

L. Permanently enjoin Defendants from engaging in any employment practices which discriminate on the basis of disability or retaliation;

M. Require Defendants to mail a letter to all employees notifying them of the verdict against them and stating that Defendants will not tolerate discrimination in the future;

N. Require that Defendants post a notice in all of its workplaces of the verdict and a copy of the Court's order for injunctive relief;

O. Require that Defendants train all management level employees on the protections afforded by the MHRA and ADA.

P.      Require that Defendants place a document in Plaintiff's personnel file which

explains that Defendants unlawfully terminated her because of her disability and retaliation; and

Q.      Grant to Plaintiff such other and further relief as may be just and proper.


Dated: November 9, 2017                        /s/ Chad T. Hansen
                                               chansen@maineemployeerights.com

                                               /s/ Peter Thompson
                                               pthompson@maineemployeerights.com


                                               Attorneys for the Plaintiff

                                               MAINE EMPLOYEE RIGHTS GROUP
                                               92 Exchange Street 2nd floor
                                               Portland, Maine 04101
                                               Tel. (207) 874-0905
                                               Fax (207) 874-0343